[Docket No. 34]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| MIKA WILSON,<br><br>               Plaintiff,<br><br>     v.<br><br>WALMART, INC.,<br><br>               Defendant. | Civ. No.: 22-cv-01218-(RMB/SAK)<br><br><br>**OPINION** |

**APPEARANCES**

Erica Lynn Shnayder, Esq.
SHNAYDER LAW LLC
89 Headquarters Plaza North, Suite 1421
Morristown, NJ 07960

     *On behalf of Plaintiff*

Keya Chaim Denner, Esq.
Matthew Tully Clark, Esq.
Salvador Pedro Simao, Esq.
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP.
15 Independence Blvd., Suite 420
Warren, NJ 07059

     *On behalf of Defendant*


**BUMB, Chief District Judge**

This matter comes before the Court upon the Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Walmart, Inc. ("Walmart" or "Defendant"). [Docket No. 34.] For the reasons set forth below, the motion shall be **DENIED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Mika Wilson ("Plaintiff") initiated the present suit upon filing a complaint in the Superior Court of New Jersey, Law Division, Cape May County, on or about January 24, 2022. [Docket No. 1-1.] Defendant Walmart Inc. ("Defendant" or "Walmart") filed a Notice of Removal on March 7, 2022, removing the action to this Court on the basis of diversity of citizenship jurisdiction pursuant to 28 U.S.C. §§ 1332(a), 1441 & 1446.[1] [Docket No. 1.] On July 25, 2022, Plaintiff filed an Amended Complaint, alleging claims against Walmart for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. [Docket No. 19 (the "Amended Complaint") ¶ 1.] Such claims are all based upon allegations that Plaintiff "was wrongfully terminated by Defendant Walmart in violation of Walmart's COVID-19 leave policy." [*Id.*]

In or around mid-November 2019, Plaintiff began her employment relationship with Walmart as an "Online Shopper/OGP" at the Rio Grande Supercenter located at 3159 Route 9 South, Rio Grande in New Jersey. [Amended Complaint ¶¶ 5, 7.] During the COVID-19 pandemic, Walmart adopted a COVID leave policy, which was administered through Sedgwick Claims Management Services, Inc. ("Sedgwick"). [*Id.* ¶ 8.] On or about December 1, 2020, Plaintiff contends that she, as the sole caregiver of her then three-year-

---

[1] The Court is satisfied as to its original subject matter jurisdiction pursuant to 28 U.S.C. § 1332 since Plaintiff is a resident of New Jersey, Walmart is a Delaware corporation with a principal place of business in Arkansas, and based on the monetary remedies available to Plaintiff in light of the damages she alleges, including back pay and front pay with prejudgment interest. [Docket No. 1 ¶¶ 6–11.] However, 28 U.S.C. § 1447(c) requires remand if it appears that the Court lacks subject matter jurisdiction at any time before final judgment is entered. If discovery shows that the amount in controversy does not exceed $75,000, the Court intends to remand this action for further proceedings.

old daughter, applied and was approved for a work leave of absence after her daughter's day care center closed due to COVID-19. [*Id.* ¶ 9.]

Plaintiff alleges that she returned to work for two weeks in or around mid-December 2020 "because she was able to obtain temporary childcare." [*Id.* ¶ 10.] However, on or about December 24, 2020, Plaintiff was "unable to clock in when she reported for work." [*Id.* ¶ 11.] Plaintiff's supervisor told her that she was marked terminated in Walmart's computer system because she had exceeded allowable "points" for absences. [*Id.*] Subsequently, Plaintiff spoke to Alvin Madison, Walmart's corporate case manager, who said the termination was an error and that Plaintiff would be reinstated. [*Id.* ¶ 12.]

In the months that followed, Plaintiff struggled to find childcare as the pandemic continued. Plaintiff alleges that on March 2, 2021, "[she] was approved for another leave of absence through July 5, 2021, with the option to extend, if necessary."[2] [*Id.* ¶ 13.] Plaintiff alleges that she contacted Sedgwick to extend her leave of absence "in advance the July 5 deadline" because her daughter's day care was still closed due to COVID-19. [*Id.* ¶ 16.] An unnamed Sedgwick representative told Plaintiff that she could not extend her leave because she had been "marked inactive in Walmart's computer system." [*Id.*] Plaintiff alleges that she attempted to call, and when she couldn't get in touch, even went to the Rio Grande store, but was unable to locate her supervisor or anyone in the Human Resources ("HR") department. [*Id.* ¶ 17.] Plaintiff then found out from an HR representative named Adrienne

---

[2] It is unclear to the Court whether Plaintiff's alleged leave of absence in December 2020 and this "leave of absence through July 5, 2021" was requested and/or approved as separate requests or a single request. Although Plaintiff alleges that she was approved after making separate requests, Plaintiff's Leave Approval Letter shows "leave dates approved: 12/01/2020 – 07/05/2021." [Docket No. 30-1, at 2.] The Court will assume Plaintiff's allegations are true for purposes of this Opinion.

that "Sedgwick is wrong, and that Plaintiff was terminated because she did not return to work on July 6, 2021." [*Id.* ¶ 18.] Plaintiff alleges that she made multiple unsuccessful attempts to contact Walmart's corporate case manager, Alvin Madison, and a different unnamed Walmart case manager. [*Id.* ¶¶ 19–20.] Subsequently, Plaintiff spoke to another Sedgwick representative, named Rayna, who stated that Plaintiff "was marked inactive in Walmart's computer system as of March 2, 2021," the same day Plaintiff alleges her second leave of absence was approved. [*Id.* ¶ 21.]

Most importantly, the parties dispute which specific "policy" of Walmart's is at issue here, and both parties rely upon different underlying documentation extraneous to the Amended Complaint. On the one hand, Walmart relies upon its company-wide COVID-19 emergency leave policy ("Walmart's COVID Leave Policy") and appended a copy of such policy to its motion. [Docket No. 34-3, at 42–45.] Defendant argues that the termination of Plaintiff's at-will employment was not unlawful, as Walmart's COVID Leave Policy contains a clear and prominent disclaimer that the policy is not a contract of employment and that Walmart remains free to terminate the at-will employment relationship at any time for any reason or no reason, consistent with applicable law. [Docket No. 34-1, at 3.]

However, Plaintiff contends that her contractual guarantee of reinstatement did not come from Walmart's COVID Leave Policy, but from a leave approval letter Walmart sent directly to Plaintiff dated March 2, 2021 ("Plaintiff's Leave Approval Letter"). [Docket No. 30-1.] In fact, Plaintiff contends that she was not even aware of Walmart's COVID Leave Policy[3] until after she received a letter from Defendant that her claims lack merit pursuant to

---

[3] However, the Amended Complaint does refer to Walmart's COVID Leave Policy, albeit generally, stating that "[a]s a result of the COVID-19 pandemic, Defendant Walmart

Fed. R. Civ. P. 11 and informing her of its anticipated motion to dismiss. [Docket No. 36, at 1.] Unlike the company-wide policy, Plaintiff argues, Plaintiff's Leave Approval Letter contains no such disclaimer that it is not a binding contract of employment. [*Id.* at 2.] To the contrary, Plaintiff's Leave Approval Letter contains the following disclaimer:

> **NOTE FOR COVID LEAVES:**  While this leave type is not typically job protected, an exception has been granted to allow for job protection for the duration of leaves related to COVID-19. Your position is not to be replaced for the dates that are listed above as approved; however, your role may be temporarily filled until you return. **Note:** If you intentionally provide inaccurate information or use COVID leave for any reason other than that for  which your leave was requested and approved, you may be subject to disciplinary action up to and including termination.

[Docket No. 30-1, at 2.] The Court now turns to the pending motion.

## II.     LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

enacted a job-protected leave policy whereby employees were permitted to take up to 52 weeks of unpaid leave related to COVID-19." [Amended Complaint ¶ 8.]

555 (2007) (first citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); then citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); and then citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original). Further, "to determine the sufficiency of a complaint," the Court must follow a three-step process:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009) (alterations in original)). A district court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). Thus, "[a] motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

Further, District Courts generally may not consider matters extraneous to the pleadings in deciding a motion to dismiss without converting the motion into a one for

summary judgment. *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 493 (3d Cir. 2017) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). However, there is an exception to the general rule for a document "integral to or explicitly relied upon" in the operative complaint. *Id.*

## III.   ANALYSIS

As an initial matter, the Court finds that there are disputed factual issues regarding which policy or contract ultimately governs the parties' dispute. However, in deciding the pending motion, the Court must view Plaintiff's allegation as true and in a light most favorable to her. Thus, the Court will assume for purposes of this Opinion that Plaintiff's Leave Approval Letter governs.

Walmart's main argument in support of its motion to dismiss is "that an employer's handbook or policies do not establish a contract of employment where the policy at issue contains a clear and prominent disclaimer disavowing contractual obligations." [Docket No. 34-1, at 1.] Walmart argues Plaintiff's breach of covenant of good faith and fair dealing claim must also be dismissed if there was no employment contract between the parties, and relatedly, that Plaintiff's remaining claim for promissory estoppel fails to state a claim because Plaintiff could not have reasonably relied upon a leave policy with a clear disclaimer that it is not a contract of continued employment and the employment relationship remains at-will. [*Id.* at 5–7.]

In support of its motion, Walmart relies upon *Woolley v. Hoffmann-La Roche, Inc.*, where the New Jersey Supreme Court held "that absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer." 99 N.J. 284, 286, *modified*, 101 N.J. 10

(1985). However, Walmart's COVID Leave Policy is neither integral to nor expressly relied upon by Plaintiff as the basis for the claims set forth in her Amended Complaint. Thus, the policy is not evidence the Court may consider in determining whether the Amended Complaint states a plausible claim, and Walmart's related argument regarding the prominence of the policy's disclaimer, and in turn the enforceability of Walmart's COVID Leave Policy, is not relevant at this juncture.

Having reviewed the Amended Complaint and as made clear by Plaintiff's opposition brief, the claims asserted are based upon Plaintiff's Leave Approval Letter. The Court finds that such document is both integral to and explicitly relied upon in the Amended Complaint.[4] In opposition, Plaintiff relies upon *Lapidoth v. Telcordia Technologies, Inc.*, where the New Jersey Appellate Division found that whether an employer's letters authorizing a former employee's maternity leave created a contractual right to reinstatement was a material question of fact that precluded the trial court's summary judgment ruling in favor of the employer. 420 N.J. Super. 411, 427 (App. Div. 2011). The *Lapidoth* Court explained that the employer's letters authorizing the employee's maternity leave and "relating its policy on maternity leave seemed to contradict" the policy's disclaimer that the employment relationship remained at-will. *Id.* at 426. So, too, does the disclaimer in Plaintiff's Leave Approval Letter appear to directly contradict the disclaimer in Walmart's COVID-Leave Policy that Plaintiff remained employed at-will.

---

[4] The Court notes that Plaintiff's Leave Approval Letter was not filed with the original complaint in state court nor the Amended Complaint. Counsel for Plaintiff first filed a copy of Plaintiff's Leave Approval Letter as an attachment to a pre-motion letter regarding Defendant's anticipated motion to dismiss. [Docket No. 30-1.] Plaintiff's Leave Approval Letter was also filed as an exhibit to counsel's sworn declaration accompanying Plaintiff's opposition brief. [Docket No. 37-1.]

The *Lapidoth* Court reasoned that the terms of the policy, as well as the fact that the employer previously gave the employee nine other maternity leaves during the course of her employment, would allow "a reasonable employee could interpret the policy as promising reinstatement." *Id.* Walmart makes a fair point in its reply brief that there is no years-long course of conduct here that would allow Plaintiff to conclude that her employment was guaranteed. [Docket No. 40, at 1.] But Plaintiff does allege that she was previously granted a leave of absence by Walmart in December 2020, but then returned to work for Walmart. [Amended Complaint ¶¶ 9–10.] The disclaimer in Plaintiff's Leave Approval Letter also explicitly made such a guarantee of job protection and even acknowledged that such promise by Walmart was atypical:

> **NOTE FOR COVID LEAVES:** While this leave type is not typically job protected, an exception has been granted to allow for job protection for the duration of leaves related to COVID-19. Your position is not to be replaced for the dates that are listed above as approved; however, your role may be temporarily filled until you return.

[Docket No. 30-1, at 2.]

Absent a contract providing otherwise, employment in New Jersey is at-will. *Witkowski v Thomas J. Lipton, Inc.*, 136 N.J. 385, 397, 643 A.2d 546 (1994). However, a contract for continued or guaranteed employment necessarily alters the at-will nature of the employment relationship; such a contract may arise from a company policy or practice, *Woolley*, 99 N.J. at 298, or from a promise made by the employer directly to the employee. *Troy v. Rutgers*, 168 N.J. 354, 369, (2001). The Court finds that the above disclaimer in Plaintiff's Leave Approval Letter constitutes a promise of continued employment made by Walmart directly to Plaintiff. Thus, the question is whether Plaintiff's Leave Approval Letter is an enforceable contract.

Courts applying New Jersey contract law in this context have concluded that when "an employee[] continue[s] [to] work in reliance on the employer's promise of job security," as well as when an employee has "relinquished a competing job offer," the employee has given sufficient consideration for the formation of an enforceable contract of continued employment. *Id.* at 368–69. Here, viewing the allegations in the Amended Complaint in a light most favorable to Plaintiff, the Court is satisfied that Plaintiff has alleged that she continued to perform her duties in reliance upon the employer's promise of job security. Although Plaintiff alleges that she was on approved leave and not rendering services to Walmart at the time her employment relationship was terminated, she also alleges that she continued to show up for shifts at Walmart in mid-December during a time when she was apparently on approved leave per Plaintiff's Leave Approval Letter. [Amended Complaint ¶ 10.] Thus, it appears that Plaintiff did not search for other jobs and fully expected to be reinstated once her leave of absence ended. The Amended Complaint also expressly alleges that Plaintiff relied on Walmart's promise of job-protected leave. [*Id.* ¶ 15.] Accordingly, the Court finds that the Amended Complaint states a plausible breach of contract claim. More specifically, that Walmart promised to guarantee Plaintiff's position through July 5, 2021, but terminated her employment before such date, which decision was only communicated to Plaintiff when she tried to get in touch with Walmart about extending her leave prior to July 5th. [Amended Complaint ¶¶ 13–16.] Relatedly, the Court finds that Plaintiff's claim arising under the covenant of good faith and fair dealing also survives Walmart's motion under Rule 12(b)(6) since Walmart's argument depends entirely on the absence of such a contract.

Finally, the Court considers Plaintiff's claim of promissory estoppel. To survive Walmart's motion, Plaintiff must allege (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) a definite and substantial detriment in said reliance. *Peck v. Imedia, Inc.*, 293 N.J.Super. 151, 165 (App.Div.1996). Defendant argues that there is no clear and definite promise of continued employment since its company-wide policy included a disclaimer that employment with Walmart remained at-will, and that Plaintiff cannot reasonably rely on a promise that includes such a clear and prominent disclaimer. However, as explained above, the disclaimer in Walmart's COVID Leave Policy is not properly before the Court at this stage of the litigation. Walmart's final argument—that Plaintiff did not suffer a detriment upon termination of her employment beyond that suffered by any other at-will employee—is also unavailing given the Court's finding that Plaintiff's Leave Approval Letter may constitute a binding promise of continued employment that altered the at-will nature of Plaintiff's employment with Walmart. Thus, the Court finds that Amended Complaint clearly alleges that Plaintiff's reliance was reasonable and that the termination of her employment during the period of guaranteed job security was a substantial detriment. Thus, Plaintiff's promissory estoppel claim also survives.

To the extent that discovery shows that Plaintiff's Approval Letter was not a binding contract of employment—if Plaintiff's Leave Approval Letter was not, in fact, supported by adequate consideration, if Plaintiff intentionally provided Walmart with inaccurate information; if Plaintiff used her approved COVID leave for a reason other than that for which she was approved, etc.—then it appears that Walmart's COVID Leave Policy will govern the dispute. It also appears that Walmart's COVID Leave Policy does contain an

11

enforceable disclaimer that employment with Walmart remained at-will. However, the Court leaves the disputed factual issues regarding which specific policy or contract ultimately governs the present dispute for another day.

## IV.    CONCLUSION

For the above stated reasons, Defendant's motion shall be **DENIED**. An accompanying Order of today's date shall issue.


<u>July 25, 2023</u>                                         <u>s/Renée Marie Bumb</u>
Date                                                        Renée Marie Bumb
                                                            Chief District Judge